State *v.* Williams.

THE STATE *v.* L. B. WILLIAMS.

BANKRUPTCY. *Fraudulent conveyance. Judgment.* A, having made a fraud-. ulent conveyance of his real estate, was afterwards sued by B. During the pendency of the suit, A filed his petition in bankruptcy, and obtained his discharge before judgment was had against him. Afterward, B filed a bill to set aside the fraudulent conveyance, and to subject the property to the payment of the judgment against A: *Held,* that the discharge in bankruptcy was no bar to the proceeding.

FROM HARDIN.

Appeal from the Chancery Court.    G. H. NIXON, Chancellor.

ATTORNEY-GENERAL HEISKELL, PITTS & CUNNING-HAM for the State.

INGE & INGE for Williams.

McFARLAND, J., delivered the opinion of the court.

The State obtained judgment against T. W. Byrd and others on the 17th of May, 1773, in the Circuit Court of Hardin county, for upwards of $8,000, said Byrd and others being the sureties of E. J. McGee, revenue collector for the years 1866 and 1867 for said county, the judgment being for the balance of revenue due the State.    An execution was issued on this judgment, and returned *nulla bona.*

The present bill was filed the 3d of March, 1876,

for the purpose, among other things, of setting aside a conveyance of certain lands alleged to have been made by said T. W. Byrd to his son-in-law, W. D. Read, on the 29th October, 1869, it being charged in the bill that said conveyance was made for the purpose of hindering and delaying creditors.	In addition to the above allegations the bill further charges that the suit in which the State recovered the aforesaid judgment was commenced on the 29th day of June, 1870, and that said defendant Byrd appeared and pleaded to the action; while this action was pending, on the 22d December, 1871, said Byrd filed his petition in bankruptcy in the United States Court; on the 8th of January, 1872, he was adjudged a bankrupt, and on the 15th of April, thereafter, was duly discharged; that in his schedule of assets he reported no real estate, and nothing, in fact, but a few articles of personal property, which were allowed him as exemptions. The only liability reported of any consequence was the aforesaid liability to the State.

As before stated, after this discharge was obtained, on the 17th of May, 1873, the cause of the State was tried, and judgment rendered as before stated.

A demurrer filed by Byrd and Read was sustained, upon the ground that the chancery court had no jurisdiction to grant the relief prayed for, the facts stated in relation to the bankrupt proceedings forming an insuperable obstacle.

We think this precise question has not been decided by this court.	We have several times held that the State courts have no jurisdiction to set aside a discharge

granted by the United States court in bankrupt proceedings upon the ground that the discharge was obtained by fraud. The court has also held that pending bankrupt proceedings a creditor cannot disregard such proceedings, and proceed in the State court to collect his debt by setting aside a fraudulent conveyance; that he must seek his remedy in the bankrupt court. *Alsabrook* v. *Cates et al.*, 5 Heisk.

In the case of *Hautrick et al.* v. *Bragg et al.*, MS., the complainants had a bill pending to reach certain properties of the debtors to satisfy their debt, and for this purpose to set aside a decree of court which it was alleged was obtained by fraud, and by which the title to the debtor's property was vested in his children. Pending this bill the debtor filed his petition in bankruptcy, the complainants appeared, proved their claim, and resisted the discharge upon the ground of this fraudulent disposition of the debtor's property, but the question was decided against them by the bankrupt court, and this court held that they were thereby concluded, and could not afterward successfully prosecute their cause in the State court.

This holding was manifestly inevitable, upon the ground that the question was *res adjudicata*, and because the complainants were no longer creditors, their debts being discharged by the bankrupt proceeding.

But in the present case it is manifest that the State has a valid judgment against the defendant Byrd which is not affected by the bankrupt proceedings, so far as the right is concerned to collect the same out of any property or rights the said defendant now has

or may acquire subject to execution or legal process, although the claim was in existence at the date of the bankrupt proceedings; yet, as the judgment is of a date more than a year subsequent to the defendant's discharge, we must take it that the defendant waived his discharge by failing. to plead it, or that the court determined that the liability was one of that class not discharged by the bankrupt proceedings. The judgment is beyond doubt valid, and being founded upon a claim in existence at the commencement of the bankrupt proceedings, it must be held to stand upon the footing of a debt not dischargable in bankruptcy. How then can the complainant proceed to the collection of this judgment? Leaving out of view the bankrupt proceedings, and taking the bill as true, the case is clear, the conveyance being in fraud of complainant's claim then in existence.

Do the bankrupt proceedings form an insuperable obstacle? By the provisions of the bankrupt act the property and rights of the bankrupt pass to and vest in the assignee for the benefit of creditors, and this includes property previously conveyed in fraud of creditors; but this latter must mean only the right to sue for and recover property thus fraudulently conveyed. By such conveyance the title to the property passes to the fraudulent vendee where it remains until set aside at the suit of creditors, or the assignee suing for the benefit of creditors, so that the title to the property does not absolutely pass to the assignee until a suit is successfully prosecuted for the purpose of setting aside the conveyance.

The assignee, then, has the right to sue for and recover the property thus fraudulently conveyed for the benefit of all creditors who prove their claims. It is, perhaps, very clear that a creditor who has thus proved his debt, and who thus acquires a right to share in the distribution, must prosecute his right to reach the bankrupt's assets through the assignee. His right is to share with the other creditors in the distribution of the bankrupt's assets, and for this purpose it is the duty of the assignee to sue for and recover all property and assets in his reach; but beyond this a creditor standing in this attitude cannot go; his debt against the bankrupt is discharged, leaving him only the right to procure through the assignee his *pro rata* of all the assets. So that, a creditor standing in this attitude, when he attempts to disregard the bankrupt proceedings, and institute an independent proceeding, is met at once with objection that he has no claim upon which to proceed against the bankrupt; his debt is discharged, and he cannot, in this mode, withdraw assets from the jurisdiction of the bankrupt court and appropriate them exclusively to his own debt. But a creditor who has obtained a valid judgment subsequent to the bankrupt's discharge upon a pre-existing claim, does not stand in this attitude. He has a valid footing upon which to proceed against any property rightfully subject to his debt. He might have sought his share of the assets in bankruptcy, in which event he would have to seek his right through the assignee, but after having received his share he is not, like other creditors, at the end of his row; he still has a valid

State *v.* Williams.

judgment not discharged, and to have satisfaction of this judgment he may still proceed against property which by law is liable. Why shall he not proceed against the property conveyed in fraud of creditors? The answer is, that this property or right is given to the assignee for the benefit of those creditors who proved their claims and acquired a right to a distribution. But is this right given to the assignee exclusive of all others? We may concede that if the assignee assert his claim, that it would be superior to the right now asserted by complainant, but it is not exclusive. Suppose the assignee had sued for and recovered the property now in controversy, and out of proceeds paid all the debts proven, leaving a surplus—as according to the facts in the bill alleged would have been the result—might not the complainant have reached this surplus; if not, where would the surplus go? We think the complainant might reach it. How? Not through the assignee, for the claim was not proven in the bankrupt court, and no right of participation acquired.

But the assignee has not sued for and recovered the property, as often happens, not being willing to risk the costs of a suit. The claim was not prosecuted. Shall a creditor whose debt is not discharged, and who has a valid judgment, lose his right, which, as we have said, is an independent right?

The bankrupt cannot object to the recovery sought in the present bill. The judgment against him is valid. The property is gone from him in any event. How is it with the fraudulent vendee? How can he

complain? The facts conceded, the conveyance is void as to creditors, and the complainant is a creditor, but says the fraudulent vendee, the assignee in bankruptcy, has the better right to recover this property. Suppose he has, he has never asserted the right. But suppose he may yet do so, is this any objection to the complainants right to do so? In short, the complainant is a creditor, and upon the facts stated, this conveyance as to it is void. If the assignee should hereafter set up his claim, it might be only to recover the property, or its proceeds, from the complainant. The fraudulent vendee is in no danger of suffering two recoveries, as the property itself is the object of the litigation, and when once recovered from him, cannot be recovered again. The bankrupt proceedings being, at least for the present, at an end, it cannot be said that the property in controversy is in the custody or control of the bankrupt court. The court of one government cannot interfere with property in the actual control or jurisdiction of the other. Besides, we think, under the bankrupt act, the time in which the assignee may sue for this property has expired, but even if this be not so, the bill can be maintained.

The decree will be reversed, the demurrer overruled, and the cause remanded, the defendant paying the costs of this court.

Freeman, J., concurs upon the ground that the assignee's right to sue is barred by the bankrupt act.